ANNIE ARCHIBALD *vs.* COMMERCIAL TRAVELLERS' EASTERN
ACCIDENT ASSOCIATION.

Suffolk.     January 11, 1921. — March 10, 1921.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & JENNEY, JJ.

*Insurance,* Accident, Fraternal beneficiary.  *Fraternal Beneficiary Corporation.*
*Railroad.*

A by-law of a fraternal beneficiary corporation provided that in no event should
the amount to be paid to a beneficiary exceed the sum of $5,000, "unless loss
of life shall have resulted from accident which occurred to the member while
riding as a passenger on a passenger train and inside a passenger car thereof,
which train or car was propelled by steam power or while such train or car was
being operated by electricity, in which case the amount so paid shall not ex-
ceed $10,000.  The latter benefit does not extend to electric subways, tubes,
trolley systems, independent third-rail systems, or to any public conveyance
whatsoever, other than steam railroads, with or without electric terminal."  A
certificate holder lost his life as the result of an accident "while riding as a pas-
senger on a passenger train, and inside a passenger car thereof . . . while such
train or car was being operated by electricity" transmitted for that purpose by
overhead wires through a trolley pole to an electric motor and controller in the
leading car of the train, upon tracks originally constructed for a railroad com-
pany before 1893 for traffic exclusively by trains operated by steam and since
1900 used by the New York, New Haven and Hartford Railroad Company, as
a branch line connecting with one of its steam terminals, for passenger traffic
by trains such as that upon which the certificate holder was riding when killed,
for freight traffic by steam, for occasional excursion train traffic by steam and
for steam passenger traffic when the electric power or apparatus failed.  *Held,*
that the beneficiary named in the certificate was entitled to be paid a sum not
limited to $5,000 and not exceeding $10,000.

CONTRACT by the widow of Isaac Archibald, a member of the
defendant fraternal beneficiary company, for a death benefit.
Writ dated May 9, 1919.

In the Superior Court, the action came on to be heard upon an
agreed statement of facts before *Hall,* J., who, at the request of
the parties and without making any decision, reported it under
R. L. c. 173, § 105, as amended by Sts. 1910, c. 555, § 5; 1917,
c. 345, for determination by this court, and, the defendant having
paid to the plaintiff and the plaintiff having received without
prejudice the sum of $5,000 and interest, the parties stipulated

that, if on the pleadings and the agreed facts the plaintiff was entitled to recover, judgment should be entered for the plaintiff in the sum of $5,000 with interest and costs; and that, otherwise, judgment should be entered for the defendant without costs.

*F. D. Putnam*, for the plaintiff.

*C. T. Cottrell*, for the defendant.

JENNEY, J.  The only question to be decided is the construction and application of the by-laws of the defendant fixing the amount payable to the plaintiff, the beneficiary named in a certificate of membership issued by the defendant to her late husband, Isaac Archibald.  By agreement of the parties, all other issues are settled in favor of the plaintiff.  The defendant's by-laws, in force at the time of the accident and at the time of the death of Isaac Archibald, provided:

"But in no event shall the amount so paid to the said beneficiary exceed the sum of five thousand dollars, unless loss of life shall have resulted from accident which occurred to the member while riding as a passenger on a passenger train and inside a passenger car thereof, which train or car was propelled by steam power or while such train was being operated by electricity, in which case the amount so paid shall not exceed ten thousand dollars.

"The latter benefit does not extend to electric subways, tubes, trolley systems, independent third-rail systems, or to any public conveyance whatsoever, other than steam railroads, with or without electric terminal."

The two agreed statements of facts on which the case is reported without decision, at the request of the parties, under St. 1917, c. 345, recite: "The only issues of fact or law on which the parties disagree are whether, at the time of the accident, Isaac Archibald 'was riding as a passenger on a passenger train and inside a passenger car thereof, which train or car was propelled by steam power or while such train or car was being operated by electricity,' and whether the common carrier on which Isaac Archibald was riding at the time of his accident was an 'electric subway, tube, trolley system, independent third-rail system, or any public conveyance whatsoever, other than a steam railroad, with or without electric terminal.'  On these issues it is agreed that either party may at the trial introduce any legally competent evidence which it possesses."  When the case came on for trial, no evidence

was offered and the parties then agreed as to all other material facts. *Mitsakos* v. *Morrill*, 237 Mass. 29.

Isaac Archibald suffered injury, within the terms of his certificate, as a result of which he died on March 2, 1919. When he received the injury, he was "riding as a passenger on a passenger train and inside a passenger car thereof . . . while such train or car was being operated by electricity," transmitted for that purpose by overhead wires through a trolley pole to an electric motor and controller in the leading car of the train. The train was operated by the New York, New Haven and Hartford Railroad Company, hereinafter called the New Haven Company, a steam railroad, portions of which were operated by electricity so transmitted.

The accident happened on the Warren and Bristol branch of the Providence Division of the New Haven Company. This branch extends from Fall River in this Commonwealth to Providence, Rhode Island, with a branch in the latter State from Warren to Bristol. The Warren and Bristol branch had been built under statutes of Massachusetts and Rhode Island authorizing the construction of four railroads. After such construction, these railroads under proper authority were either leased to or purchased by the Old Colony Railroad Company, which in 1893 leased all the railroads owned or operated by it to the New Haven Company which has operated them ever since. Before 1900, the lines now constituting the Warren and Bristol branch of the New Haven Company had been operated by steam, and their location and construction were and ever since have been those of a railroad whose trains were operated by steam engines. In that year, this branch was equipped by the New Haven Company for the operation of cars by electric power transmitted as hereinbefore described. Since December 2, 1900, passenger trains on this branch have been commonly propelled by electricity, although occasionally, about once a month on an average, steam passenger trains are operated over it "on an excursion or other similar occasion." All freight trains are drawn thereover by steam locomotives which also are used to propel passenger trains when the electric power or apparatus fails. The cars are ordinary steam railroad cars with the name of the New Haven Company appearing thereon, the leading one of each train being of the same

construction but equipped with an electric motor and controller enclosed in a small cab at the forward end.   No distinction is made between the employees on this branch and those upon the steam railroads operated by the New Haven Company.   Its schedule of trains is printed in the regular time-table of the company.   The electric trains run into the general railroad terminals at Fall River and Providence.   Tickets for local traffic are sold under a zone system, and also are sold from outside places to those upon the branch, as "direct from Boston to Bristol, for example . . . and the zone rate is disregarded."

It is plain that the certificate holder when injured was within the clear words of the paragraph of the by-laws first quoted.   He was a passenger whose life was lost because of an accident which occurred when he was riding inside a passenger car on a passenger train propelled by electricity.   This the defendant concedes, but it argues that the proviso contained in the second quoted paragraph of the by-laws so restricts the broad language of the first paragraph that the plaintiff is not entitled to payment of the larger sum.   Treating the second paragraph as restrictive and as limiting in proper cases the general language, two provisions therein only are of possible application.   Omitting the others, the paragraph reads: "The latter benefit does not extend to . . . trolley systems, . . . or to any public conveyance whatsoever, other than steam railroads, with or without electric terminals." Considering first the last of these exceptions, it is apparent that the clear general language of the first quoted paragraph, which includes trains operated by electricity, is not modified nor controlled. This provision prevents the enlargement by construction of the words of the first paragraph and does not restrict its clear language.   If otherwise construed, the additional amount payable when an accident occurs resulting in death to a passenger riding in a train or car, while the train was operated by electricity, would be wholly lost.   The two provisions must be construed together, and so construed no such result follows.

The proviso, so far as it relates to electric subways, tubes, and independent third-rail systems, is not applicable.   However, that relating to "trolley systems" must be considered.   The fact that electric power customarily was used by the New Haven Company in operating its trains over a part of its lines and by means of the

use of trolleys, does not render that company or its branch upon which the accident occurred a "trolley system." It is expressly stated that the obligation of the larger payment sometimes shall apply when the train or car is propelled by electricity. If trains or cars operated by power obtained through trolleys and third-rail systems are wholly eliminated, practically no other source of the application of electric power remains at the present day as applied to the propulsion of cars and trains like those used upon the Warren and Bristol branch, and the provision of the first paragraph referring to such operation becomes substantially worthless. It is more consonant with reason and the common acceptation of language to interpret the words as not embracing cases where all the conditions of steam railroads exist except as to power; and as referring to street or interurban system of transportation by electricity, and hence inapplicable where the line operated by electricity is a part of a steam railroad system, and is not an independent electrically propelled line. It is not necessary to define the exact dividing line or attempt to establish a hard and fast rule in order to determine all possible cases; but on the facts in this case the plaintiff is entitled to the payment of a sum not exceeding $10,000 and not limited to $5,000.

The plaintiff, having received already from the defendant $5,000 and interest, in accordance with the terms of the report, is now entitled to judgment for "$5,000 with interest thereon at six per cent from June 27, 1919, and with costs."

*So ordered.*